## DE NICOLO v. PALMER et al.

District Court, S. D. New York.

May 19, 1941.

Sydney A. Syme, of White Plains, N. Y., for plaintiff.

Edward R. Brumley, of New York City (Edmund J. Moore, of New York City, of counsel), for defendants.

BYERS, District Judge.

This is a personal injury case, tried to the Court without a jury.

At about 7:30 a. m. on January 27, 1937, the plaintiff, then about sixty years of age, fell from the top to the bottom of a 14-step stairway leading to the train platform from a bridge crossing the tracks of the defendant company at Harrison, Westchester County, New York. He had purchased a ticket to Larchmont, a station between Harrison and New York City, and then used the overhead bridge to reach the westbound train leaving at 7:32 o'clock.

He said that, as he was about to go down, he put his left hand on the railing, and as he was about to use the first descending step, he slipped down the whole flight of stairs; that is, he slipped on rough sand and gravel on the top step, which he

saw before he started to descend; that there was no snow or ice on those stairs and, except for the sand and gravel, they were clean; that it was a clear, dry day; namely, that there was no condition of storm, snow or sleet.

He struck his shoulder so severely as to cause a rupture of the capsule of the right shoulder joint, which involved a rupture of a tendon and caused a deformity of the muscles and a muscle atrophy; these injuries resulted in a permanent partial disability; namely, the plaintiff cannot raise his right arm beyond the horizontal position, and this has rendered it impossible for him to continue in his calling as a carpenter, since he is a right-handed person.

The negligence imputed to the defendants according to the complaint consists: (a) in causing and permitting the treads upon said flight of stairs to become and remain worn, smooth and slippery; and (b) in permitting the said worn and slippery treads to be covered with sand and gravel so as to cause the stairs to be rendered slippery and dangerous to those lawfully using them.

■ There was no proof to support the first specification, and it must be deemed to have been abandoned.

The sole question for decision is whether, if there was sand and gravel on the top step, it was of such a constituency as to constitute a hazard which was the immediate cause of the plaintiff's injury.

It was testified on the plaintiff's behalf that the sand and gravel contained some pebbles as large as half of a little finger nail, and the Court is urged to accept that testimony and conclude that the defendants were negligent because of the presence of those pebbles.

The defendants' testimony is that there was no sand and gravel on the steps.

■ The nature of the defendants' duty to the plaintiff is thought to have been that of exercising ordinary care in view of the dangers to be apprehended, and not that of exercising the highest care which pertains to a passenger once he has boarded a railroad train, since the relation of passenger and carrier had not arisen. De Renzis v. New York Rapid Transit Corporation, 256 App.Div. 367, 9 N.Y.S.2d 983; Kelly v. Manhattan Railway Company, 112 N.Y. 443, 20 N.E. 383, 3 L.R.A. 74.

The inquiry then seems to be whether the defendants are shown to have exercised ordinary care in the maintenance of this stairway at the time of the plaintiff's accident. It would seem that within such requirement there was no right to introduce an element of hazard attendant upon the use of the steps, by placing at the top, pebbles which were large enough to be likely to cause a person in the exercise of reasonable care to slip and fall, and it is therefore necessary to determine whether the presence of such pebbles has been shown by a fair preponderance of the testimony.

The plaintiff's recital is not clear upon this subject. After stating that he saw gravel in the sand before he started to go down, he said that he had observed that condition on at least one day prior to the accident and perhaps more; that he saw that the sand was spread just lightly over the steps but it was rough and thick, and that he had used the steps for about a week. Later he could not specify the number of days upon which sand was present, except that he was sure it was there the day before the accident.

A policeman was immediately called, and the plaintiff says that, when the officer asked him what had happened, he "picked up a pebble and showed him. * * * 'This is how I.fell'". Then he said that that was the statement which he made to the agent in charge of the station, Mr. Sullivan, who died a few days thereafter. Then the plaintiff testified: "I said nothing to the policeman. I told Mr. Sullivan —I showed him the pebble."

The plaintiff has a very limited command of English and was examined through an interpreter, but it seems to be the clear purport of his testimony that he did not state anything to the policeman about having slipped on a pebble, and in that respect he is corroborated by the latter (Burgess).

The presence of such pebbles immediately after the accident is asserted by the plaintiff's witnesses Adeline Marotta and Kate Longo, in this wise: They were using the foot bridge, intending to descend from another stairway leading to an adjoining platform used for Westchester and Boston trains; they observed the plaintiff seated upon the foot of the stairway upon which he fell, and several persons gathered around him, among them the deceased agent, Sullivan; the latter had difficulty in understanding the plaintiff, and as these ladies speak Italian, Sullivan, according to them, called to the first-named and asked her to come down and act as an interpreter.

That Mr. Sullivan asked them to go upstairs and see what was on the top of the stairs, which they did, and then Mrs. Marotta said: "Yes, there is gravel here, pebbles", and she passed her foot over it, and "it was very slippy", and she said: "If I am not careful, Mr. Sullivan, I will be down there myself."

She said that the pebbles were a little larger than beads, or a little smaller; they were little stones, which she compared to the nail of her little finger, in response to a leading question.

Mrs. Longo corroborated the foregoing as follows: She went up the stairs with Mrs. Marotta and she observed what the latter was doing with her foot, and "there was a little sand there and little pebbles, whatever you would call them", and she heard Mrs. Marotta tell Sullivan what she found, speaking from the head of the stairs and as she went down.

Also the plaintiff's witness Calandrillo, who traveled upon the same train that the plaintiff intended to board, reached the platform after the plaintiff had fallen. He observed the stairway and said that it was sanded with a coarse sand, pebbly, which covered all the steps and the lower platform, and that this condition had existed for several days; that there were little fine pebbles, which may have been frozen sand.

"Q. Are you able to give us any approximate illustration of how big this gravel was? A. Well, about half the size of a finger-nail, of the small pinkie, and of course they could vary."

On cross-examination, he said that going down the steps the footage was rough and gritty, but as he descended he did not grasp the hand-rail, from which it is inferred that the condition did not impress him as dangerous; he did not give his name as a witness to any one.

For the defendants, the policeman, who arrived within a few moments of the plaintiff's fall, said that he noticed no sand on the stairs as he descended to the platform, or when he assisted another officer in carrying the plaintiff up on a stretcher on their way to the ambulance; that the plaintiff did not complain to him about there having been sand on the stairs when he fell, and that the agent Sullivan said that he had no names of witnesses. And Burgess incorporated that statement in his own official report. On cross-examination he

said that he asked the plaintiff what made him slip and the latter replied that he did not know, although there is no such entry in his report.

The witness Robinson was a passenger on the train that the plaintiff intended to use and, on approaching the stairway in question, noticed the plaintiff sitting at the foot; whereupon he returned to the ticket office and reported to agent Sullivan; on going down the stairs, he did not notice any pebbles or sand or foreign substance of any kind.

The ticket agent O'Connor called the police station and the doctor, at Sullivan's instructions, and then examined this stairway some fifteen or twenty minutes after the accident, and did not notice any sand or gravel on the steps.

The witness Melillo, bootblack at the railroad station, having been apprized of the accident, went over to observe, and spoke to the plaintiff, who in response to the witness's question said: "I slipped on the first step as I missed my hands on the railing." And that he did not mention sand or pebbles at that time. The witness did not pay any attention to whether there were in fact such substances on the stairs.

Further, it appeared that there were metal safety treads on the stairs, which were in good condition.

In appraising the foregoing testimony, it is apparent that, as to the witnesses Mrs. Marotta and Mrs. Longo, the pebbles which they say they discovered, after the former had undertaken to act as interpreter, could not have been of dangerous size or number or they would have observed them when they first descended the stairs; and so far as Calandrillo is concerned, although he noticed the presence of sand and gravel, he did not use the hand-rail in going down the stairs. It is not intended to impute any bad faith to these witnesses, by calling attention to the fact that they all bear names indicating the same racial origin as that of the plaintiff. It would have been natural for them to sympathize with his misfortune and to give their testimony under the influence of that sympathy. Plaintiff's injury was serious and disabling, and he made a most appealing witness.

It does not follow that negligence on the part of the defendants has been shown because, as the evidence is presently viewed, it is not thought that it sufficiently preponderates in favor of the plaintiff to establish

by any perceptible margin that the sand, if indeed it was present, was of other than the kind customarily used to insure firm footing during the winter months when surface conditions of snow or ice may prevail.

Those who reached the station on foot may have been expected to have particles of snow or ice adhering to the soles of their shoes, even though there had been no recent storm; the evidence is silent on that point, but it is reasonable to infer that if sand was used at the top of the stairs, scattered loosely as the evidence states, it was placed there as a precaution, and not with the intent of introducing an unnecessary element of danger to those who were called upon to descend the stairs.

If it be assumed, in spite of the evidence's being in balance on the subject, that sand was present and that it was not of a uniform texture of fineness—that some particles were larger than others—there remains the further consideration that the plaintiff testified that he knew the sand was there and had observed it at least the day before, and he does not purport to say, nor is it urged on his behalf, that its composition on the 27th of January differed from what it was on earlier occasions during the few days that the plaintiff had descended this stairway in reaching his employment in Larchmont.

This means that he had had the opportunity to complain of the sand to the station agent, if he regarded it as dangerous; also he could have avoided these stairs because he knew that there was another stairway leading to the New York bound platform, thus:

"Q. When you saw the sand on the stairway for days before, did you think of using any other stairway? A. I had to pass from there to take my ticket.

"Q. Well, you know there is another stairway to the platform, don't you? A. On the other side.

"Q. But it is the New York bound platform, is it not? A. Yes.

"Q. You did not attempt to use that stairway on any other occasion, did you? A. No, I never went through the other stairs.

"Q. But you knew it was there? A. Sure."

From the foregoing, it must be concluded either that the condition created by the presence of the loosely scattered sand was not so dangerous as to constitute a failure on the part of the company to exercise ordinary care in view of the dangers to be apprehended from the use of the stairs; or that, if the condition so created was indeed dangerous, to the knowledge of the plaintiff, he elected to make use of that stairway, knowing that he could have used the other, as to which there is no showing in respect to the presence of sand.

It results therefore that the plaintiff has not sustained his burden of proof by establishing negligence on the part of the defendants and freedom from his own contributory negligence; in consequence of which, judgment is ordered for the defendants.

Settle findings and conclusions.